*State of Maryland v. Phillip James Clements*, No. 57, September Term, 2017

**MOTION TO CORRECT ILLEGAL SENTENCE — APPEALABILITY OF AN ORDER GRANTING A RULE 4-345(a) MOTION —** The grant of a Rule 4-345(a) motion to correct an illegal sentence is not a final judgment merely upon vacation of the sentence, but rather only when a new sentence is imposed. The Court of Special Appeals dismissed the State's appeal of the trial court's order granting Respondent Clements's motion to correct an illegal sentence and vacating the sentence originally imposed. The Court of Appeals affirmed the dismissal of the State's appeal because the State lacked the authority to appeal under Maryland Code, Courts and Judicial Proceedings Article § 12-302(c)(3)(ii) until such time as the circuit court imposes a new sentence.

Circuit Court for Prince George's County
Case No. CT890459X
Argument: February 6, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 57

September Term, 2017

_____

STATE OF MARYLAND

v.

PHILLIP JAMES CLEMENTS

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: August 29, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

In 1989, Respondent Phillip James Clements was convicted of three counts of first-degree murder, two counts of attempted first-degree murder, and other crimes arising from the same incident. He was seventeen years old at the time of the murders, trial, and sentencing. He was sentenced to five consecutive life sentences with the possibility of parole for each of the three counts of murder and the two counts of attempted murder, plus a total of 23 years on the lesser counts, to be served concurrently with the life sentences. Clements's direct appeal and petition for post-conviction relief were unsuccessful.

Twenty-seven years later, in 2016, Clements filed a Motion to Correct Illegal Sentence under Maryland Rule 4-345(a) based on recent United States Supreme Court precedent involving life sentences for juvenile offenders. The Circuit Court for Prince George's County granted Clements's motion and vacated the entirety of the sentence originally imposed. The court scheduled a new sentencing hearing some months ahead to allow the court time to review the exhibits offered at the hearing on the motion, review the Supreme Court cases on the subject, and receive an updated presentence investigation report.

The State appealed within 30 days of the court's ruling. Clements filed a Motion to Dismiss in the Court of Special Appeals. He argued that the mere grant of a motion to correct an illegal sentence, without imposition of a new sentence, is not an appealable final judgment from which the State has the right to appeal. The Court of Special Appeals granted Clements's motion and dismissed the State's appeal for want of a final judgment. We agree and affirm the judgment of the Court of Special Appeals.

I.

Facts and Procedural History

On the morning of January 21, 1989, then-seventeen-year-old Phillip Clements went to Kathryn Gatlin's apartment intending to rob her for money to buy crack cocaine. He previously lived in the home of Ms. Gatlin, who was the grandmother of Clements's former girlfriend. When Clements arrived after a night of consuming multiple drugs including cocaine and PCP, he found Ms. Gatlin at home. Also present were Ms. Gatlin's adult daughters, Nancy Barowski and Toni Adams; Ms. Gatlin's developmentally disabled adult son, John Brian Barowski; and Nancy's son, Donald Thomas "Tommy" Hughes, who was fourteen years old at the time of trial.

Ms. Gatlin gave Clements breakfast but refused to give him money. Clements then repeatedly struck each of the five family members in the head with a barbell pole. He left the apartment with money taken from Ms. Gatlin's and Ms. Adams's purses and fled in Ms. Adams's car. Nancy and John Barowski were pronounced dead on the scene, and Ms. Gatlin died from her injuries one week later in the hospital. Toni Adams and Tommy Hughes suffered serious injuries.

Later on the day of the crime, Clements gave a full confession to the police. He was charged as an adult in the Circuit Court for Prince George's County with three counts of first-degree murder, two counts of attempted first-degree murder, three counts of armed robbery, and three counts of openly carrying a deadly weapon, among other crimes.

After his motion to be removed to the jurisdiction of the juvenile court was denied, Clements waived his right to a jury trial. He was tried before the court in August 1989.

The court found Clements guilty on all counts and sentenced him to five life sentences with the possibility of parole—one for each count of murder and attempted murder—to be served consecutively, with additional sentences for robbery and openly carrying a deadly weapon to run concurrently with the life sentences.

On direct appeal, the Court of Special Appeals affirmed the judgment of the circuit court, and this Court denied Clements's petition for writ of certiorari. A three-judge panel of the circuit court reviewed the sentence and left it unchanged. Clements's subsequent motion for modification of the sentence also was denied. Clements's post-conviction petition was denied in the circuit court in 1998, and his federal habeas corpus claim was denied on the merits in the U.S. District Court. *Clements v. Corcoran*, No. CA-98-2086-CCB (D. Md. Mar. 11, 1999).

*The Motion to Correct an Illegal Sentence and the Procedural Aftermath*

In 2016, Clements filed in the Circuit Court for Prince George's County a Motion to Correct Illegal Sentence pursuant to Maryland Rule 4-345(a). On December 2, 2016, the circuit court conducted a hearing on the motion, at which Clements argued that his sentence was unconstitutional under *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). Counsel also referred to *Tatum v. Arizona*, 137 S. Ct. 11, 11 (2016), a two-sentence per curiam order granting Tatum's motion "for leave to proceed *in forma pauperis* and the petition for a writ of certiorari," vacating the judgment, and remanding the case "to the Court of Appeals of Arizona, Division Two for further consideration in light of *Montgomery v. Louisiana*." Justice Sotomayor wrote separately to explain that Tatum's

3

case was one of five such cases from Arizona then pending in the Supreme Court, in none of which did "the sentencing judges address[] the question *Miller* and *Montgomery* require a sentencer to ask: whether the petitioner was among the very 'rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility.'" *Id.* at 12 (Sotomayor, J., concurring) (quoting *Montgomery*, 136 S. Ct. at 734).

In support of the motion to correct the sentence, Clements contended that the five consecutive life sentences, in the aggregate, constitute a de facto sentence of life without parole in violation of *Graham*, *Miller*, and *Montgomery*.[1] He further contended that he does not have a meaningful opportunity for release consistent with those Supreme Court cases, given the regulations and processes governing parole consideration for juvenile offenders serving life sentences in Maryland. The court heard arguments of Clements's counsel and the State, and then informed the parties that the court would take the motion "under advisement to look at all of the cases that were cited as well as the exhibits that have been admitted."

The parties returned to circuit court on January 6, 2017, at which time the court resumed the hearing, granted Clements's Rule 4-345(a) motion, and explained the reasons for doing so. The court stated that the sentencing judge had failed to undertake the particularized analysis required by *Miller* and *Montgomery* when sentencing juveniles to life without parole, thereby rendering illegal the five consecutive life sentences that were

---

[1] The Division of Correction's Commitment Unit confirmed in a November 16, 2016 letter to Clements's then-counsel that, as of October 31, 2016, Clements was eligible for parole on July 19, 2047, but this date could be shortened by earned diminution credits or lengthened by the revocation of credits for institutional infractions.

4

imposed in 1989.  Consequently, the court vacated the original sentence and scheduled a resentencing hearing, which later was deferred pending resolution of the State's appeal to the Court of Special Appeals.

Clements filed a motion to dismiss the appeal.  He argued that the State did not have the right to appeal from the circuit court's order granting his motion to correct an illegal sentence and vacation of the sentence.  Without the imposition of a new sentence, Clements argued, the order was not yet a final judgment for purposes of Maryland Code, Courts and Judicial Proceedings Article ("CJP") § 12-302(c)(3).  The intermediate appellate court agreed with Clements.  *State v. Clements*, No. 2607, Sept. Term 2016, 2017 WL 4117887, at *3 (Md. Ct. Spec. App. Sept. 15, 2017).  That court reasoned that the mere grant of the motion, whether or not accompanied by vacation of the then-extant sentence, did not fall within any of the provisions of CJP § 12-302(c) granting the State the right of appeal in a criminal case under certain limited circumstances.  The court dismissed the State's appeal without reaching the merits.

We granted the State's petition for writ of certiorari, *State v. Clements*, 456 Md. 82 (2017), to address two questions:

1. Did the Court of Special Appeals err in dismissing the State's appeal?

2. Did the circuit court err in considering, and granting, Clements's motion to set aside an "illegal" sentence?

For reasons that follow, we hold that the Court of Special Appeals did not err in dismissing the State's appeal.  We therefore do not reach the second question presented.

5

## II.

## Standard of Review

The question whether a circuit court's order is appealable is a question of law that this Court considers *de novo*. *Monarch Acad. Balt. Campus, Inc. v. Balt. City Bd. of Sch. Comm'rs*, 457 Md. 1, 40 (2017).

## III.

## The Parties' Contentions

The State contends that the circuit court's order granting Clements's Motion to Correct Illegal Sentence was a final, appealable order. The State lifts from *Ruby v. State*, 353 Md. 100, 107 (1999), the statement that "[a] collateral challenge, by its very nature, is a separate and distinct civil procedure by which a defendant may challenge his or her conviction, sentence, or imprisonment." From there, the State argues that Clements's motion to correct an illegal sentence is a collateral challenge and therefore a "separate and distinct civil procedure" that resulted in the court's grant of Clements's motion and vacation of his sentence. That action by the circuit court, the State further argues, was a "final judgment" entered in a "civil case" and therefore subject to direct appeal under CJP § 12-301.

Alternatively, the State asserts that even if the circuit court's order were considered part of a criminal proceeding, CJP § 12-302(c) entitles the State to appeal the circuit court's grant of Clements's motion. For that proposition, the State points to subsection (c)(3)(ii). That subsection provides that "[t]he State may appeal from a final judgment if the State alleges that the trial judge: . . . (ii) Imposed or modified a sentence in violation of the

6

Maryland Rules." Because the circuit court vacated Clements's sentence, the State argues, the circuit court's order purports to grant Clements the right to a new, different sentence, and, by that ruling alone, "modified" the sentence previously imposed. Thus "modified," the State's argument goes, the sentence was a final judgment subject to a direct appeal.

Clements counters that the Court of Special Appeals correctly dismissed the State's appeal of the circuit court's order granting his Motion to Correct Illegal Sentence. Clements first contends that a motion to correct an illegal sentence and subsequent order granting or denying the motion are part of the underlying criminal proceedings. Clements directs us to *State v. Kanaras*, 357 Md. 170 (1999). We made clear in that case that, "[w]hile a motion under Rule 4-345 may be made at any time, it is part of the same criminal proceeding and not a wholly independent action. The Rule simply grants the trial court limited continuing authority in the criminal case to revise the sentence." *Id.* at 183–84. Clements argues that this statement from *Kanaras* supersedes the out-of-context and less precise statement from *Ruby*, on which the State relies, that a "collateral challenge" to a sentence is a civil proceeding from which a direct appeal will lie under CJP § 12-301, *see Ruby*, 353 Md. at 107.

Because the underlying case was a criminal case, Clements continues, the State may appeal only as authorized by statute. Clements argues that CJP § 12-302(c)(3)(ii) is the only statutory provision that could "conceivably" apply in this case, but it does not authorize this appeal. As noted above, that provision allows the State to appeal from a final judgment if the State alleges that the trial judge imposed or modified a sentence in violation of the Maryland Rules.

7

Clements then argues that the circuit court's grant of the Rule 4-345(a) motion was not itself a final judgment because the resentencing has not yet occurred. Clements adds that, contrary to the State's view of *Ruby*, the circuit court did not "impose[] or modif[y]" the sentence but, instead, merely vacated the original sentence that the motions court ruled was substantively illegal. Clements reminds us that "[r]estrictions on the State's ability to appeal . . . have been strictly construed against the State." *State v. Manck*, 385 Md. 581, 597 (2005). Strict construction and application of § 12-302(c), as Clements sees it, do not permit the argument the State advances.

IV.

Discussion

*The Nature of a Motion to Correct an Illegal Sentence*

We shall address the appealability of a Rule 4-345(a) motion to correct an illegal sentence. First, however, we must determine whether the circuit court's order granting Clements's Rule 4-345(a) motion and vacating the life sentences are part of the underlying criminal proceeding, as Clements argues, or, as the State maintains, a collateral challenge that is civil in nature and therefore appealable under CJP § 12-301. We are informed by pertinent cases of this Court and appeal provisions of the Courts and Judicial Proceedings Article. We begin with the cases.

*Ruby v. State*

As noted, the State makes much of our decision in *Ruby*. The proceedings in *Ruby* are somewhat convoluted. For our purposes, it is enough to note that our decision ultimately involved the question of whether the issuance of a writ of error *coram nobis* is

8

appealable as a final civil judgment. *Ruby*, 353 Md. at 104. Ruby's decision to seek *coram nobis* relief followed several failed attempts to obtain relief in the circuit court and Court of Special Appeals. One such attempt was a second motion for new trial. The circuit court denied that motion, but due evidently to an error on the part of a court clerk, Ruby did not learn of the court's decision until after the thirty-day deadline to appeal had lapsed. *Id.* at 103. Ruby then filed a petition for writ of error *coram nobis* seeking as relief the right to file a belated appeal from the circuit court's denial of his motion for a new trial. *Id.* at 103–04. The case was docketed in circuit court as a civil matter, and the court, sitting as a civil court, issued the writ granting Ruby the relief of the right to file a belated appeal. *Id.* at 104. The State did not appeal that decision by the *coram nobis* court. *Id.* at 104.

In due course, Ruby, exercising the remedy provided by the writ, filed an appeal in the underlying criminal case. *Id.* The Court of Special Appeals, upon the State's motion, dismissed the appeal, holding that it did not have jurisdiction to hear the appeal because the circuit court had improperly issued the writ of error *coram nobis*. *Id.* at 104. Petitioner filed a petition for writ of certiorari, which we granted. *Id.* We recognized:

> A writ of error *coram nobis*, like a habeas corpus proceeding and a proceeding under the [Post Conviction Procedure] Act, still may be used to collaterally challenge a criminal judgment. . . . Because collateral challenges are separate from the underlying judgment, the filing of such an action typically initiates an entirely new action in which the defendant sets forth his or her claims. If the defendant prevails in the civil court where he or she sought collateral relief, that court then issues the writ directing the criminal court pursuant to the terms of the writ.

*Id.* at 106–07.

We held that the State was precluded from challenging in the Court of Special

9

Appeals the issuance of the writ of *coram nobis* in Ruby's case because once the writ issued and the time for appellate challenge ran its course, "[t]he correctness of the trial court's grant of the writ of error *coram nobis* was, after the time for appeal had passed, no longer appealable." *Id.* at 111. The State therefore was not entitled to raise in Ruby's belated appeal a challenge to the *coram nobis* court's issuance of the writ. *Id.* at 112. And, because the State's challenge to issuance of the writ "was not before" the Court of Special Appeals, that court was limited to considering only those claims Ruby raised on belated appeal of the underlying criminal conviction. *Id.* at 112–13.

The State in this case, seizing upon our language in *Ruby* concerning the civil nature of collateral attacks, argues that any court action on a motion to correct an illegal sentence is a civil proceeding that is appropriately deemed a challenge collateral to the underlying criminal case. If the proceedings are civil, the State argues, the State is not restricted in its opportunity to appeal the trial court's order.

*State v. Kanaras*

Several months after deciding *Ruby*, we issued our opinion in *State v. Kanaras*, 357 Md. 170 (1999). That case brought clarity to what had been a confusing line of cases addressing the nature of a Rule 4-345(a) motion to correct an illegal sentence.

Kanaras filed a petition for relief under the Maryland Post Conviction Procedure Act and, separately, a motion under Rule 4-345(a).[2] 357 Md. at 174–75. The circuit court

---

[2] Kanaras also sought relief under Rule 4-345(b) (providing for a motion to revise a sentence in cases of fraud, mistake, or irregularity). That provision is not relevant to the case before us.

denied both. *Id.* at 175. Kanaras noted an appeal to the Court of Special Appeals on his Rule 4-345(a) motion. The State filed a motion to dismiss the appeal, arguing that Kanaras could not appeal the circuit court's denial of his motion. *Id.* at 176. The intermediate appellate court held that the circuit court's denial of the motion was appealable, and this Court agreed.

We addressed whether the text of the Post Conviction Procedure Act, which bars appeals "in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration," precludes an appeal from a circuit court's ruling on a Rule 4-345(a) motion. *Id.* at 178 (quoting Art. 27, § 645A(e) (1998) (current version at Md. Code Ann., Criminal Procedure Article §§ 7-101 to 7-109)). Noting our "plethora of inconsistent opinions" on the appealability of motions to correct an illegal sentence under Rule 4-345(a), we clarified that "[w]hile a motion under Rule 4-345 may be made at any time, it is part of the same criminal proceeding and not a wholly independent action. The Rule simply grants the trial court limited continuing authority in the criminal case to revise the sentence." *Id.* at 177, 183–84. Central to our holding was that a motion to correct an illegal sentence is not a "separate common law or statutory cause[] of action" as described in the post-conviction statute. *Id.* at 183.

*The Present Case*

The State's argument creates an apparent tension between *Ruby* and *Kanaras* where none exists. On the one hand, *Ruby* directs that certain collateral causes of action, such as writs of error *coram nobis* and habeas corpus, are civil proceedings separate and distinct

11

from the underlying criminal proceedings. On the other, *Kanaras* instructs that a Rule 4-345(a) motion is not a civil proceeding separate from the criminal case. These two statements are not inconsistent with one another. We remain doubtful, as we were in *Kanaras*, "that this Court's rule-making authority would extend to the creation of a separate cause of action." 357 Md. at 183. Rather, we continue to recognize that "[t]here may be illegalities in a sentence which have nothing to do with the validity of the incarceration." *Id.* Such illegalities are properly addressed in a Rule 4-345(a) motion, which is decidedly "not a wholly independent action." *Id.*

*Ruby* does not apply here. Motions to correct an illegal sentence under Rule 4-345(a) are part of the underlying criminal proceedings.

### *Appealability*

Under Maryland law, the State's right of appeal in a criminal case is governed by statute. *State v. Rice*, 447 Md. 594, 617 (2016). The State may appeal from the ruling of a circuit court in a criminal case only as enumerated in CJP § 12-302(c), which, relevant here, provides:

> (c)(1) In a criminal case, the State may appeal as provided in this subsection.
>
> (2) The State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition.
>
> (3) The State may appeal from a final judgment if the State alleges that the trial judge:
> > (i) Failed to impose the sentence specifically mandated by the Code; or
> > (ii) Imposed or modified a sentence in violation of the Maryland Rules.

12

These "[r]estrictions on the State's ability to appeal . . . have been strictly construed against the State." *Manck*, 385 Md. at 597.

We agree with Clements and the Court of Special Appeals that CJP § 12-302(c) does not authorize the State's appeal in this case. The only subsection that could have authorized this appeal, had it come to us after resentencing, would have been CJP § 12-302(c)(3)(ii). But the circuit court's order was not a "final judgment" that "imposed or modified a sentence" as required for the State to appeal under that subsection. *See Clements*, 2017 WL 4117887, at *2. The circuit court merely granted Clements's motion, vacated the original sentence, and scheduled a new sentencing hearing, which since has been deferred pending appeal. The trial court's order therefore was interlocutory: it was a step toward the imposition of a new sentence—it was not, however, either a final judgment that "imposed" a sentence or a final judgment that "modified" a sentence.

A final judgment in a criminal case resulting in a guilty verdict necessarily requires the imposition of a sentence. *Hoile v. State*, 404 Md. 591, 612 (2008) ("In a basic sense, 'a final judgment consists of a verdict [in a criminal case] and either the pronouncement of sentence or the suspension of its imposition or execution.' *Lewis v. State*, 289 Md. 1, 4 (1980).").[3] S*ee also, e.g.*, *Tweedy v. State*, 380 Md. 475, 496 (2004) (asserting that "a

---

[3] The State relies upon *Hoile* in arguing that the grant of the motion was an appealable final order for purposes of CJP § 12-302(c)(3)(ii). *Hoile* does not assist the State. In that case, Hoile was sentenced; the sentence was then reduced on Hoile's motion; and the court subsequently vacated the reduced sentence on the victim's motion, effectively reinstating the original sentence. 404 Md. at 597–601. We held that the order vacating the reduced sentence itself imposed a sentence—the original sentence—and therefore was appealable. *Id.* at 619. We also emphasized that a new commitment order had been filed,

verdict of guilty is not a final judgment until sentence is pronounced"); *Campbell v. State*, 373 Md. 637, 665 (2003) ("[A] verdict without a sentence in a criminal case is not a final judgment."); *Webster v. State*, 359 Md. 465, 491 (2000) ("Under Maryland law, a final judgment in a criminal case is comprised of the verdict of guilty, and the rendition of sentence.").

V.

Conclusion

We hold that the circuit court's grant of Clements's Rule 4-345(a) motion to correct an illegal sentence and vacation of the sentence imposed in 1989 was an interlocutory order that will not become a final judgment triggering the State's right to appeal pursuant to CJP § 12-302(c)(3)(ii) until such time as the circuit court imposes a new sentence.

We therefore affirm the judgment of the Court of Special Appeals that reaches the same result.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

---

providing additional indicia of finality. *Id.* at 618. *Hoile* presented an altogether different factual circumstance than is presented here.

14